MIDDLETON S. BORLAND, as Receiver of the HUDSON NAVIGATION COMPANY, Plaintiff, *v.* STANDARD MARINE INSURANCE COMPANY, LIMITED, and Others, Defendants.

Municipal Court of the City of New York, Borough of Manhattan, Eighth District, February 9, 1925.

Insurance — marine insurance — action to recover for damages to paddle shaft of steamboat — insurance against damages through breakage of shafts or any latent defect — evidence sufficient to indicate fracture of shaft developed during life of policy — defect being latent was not discovered until after policy expired — plaintiff entitled to judgment.

Plaintiff is entitled to judgment in an action to recover from the defendants their *pro rata* share of a loss arising from damage to a paddle shaft of plaintiff's steamboat where the defendants insured the steamboat against loss of or damage to hull or machinery through breakage of shafts or any latent defect, since the evidence is sufficient to indicate that a fracture of the paddle shaft developed during the life of the policy though the fracture, a latent imperfection, was not discovered until after the policy had expired.

ACTION by receiver of company which owned a steamboat to recover from defendants their *pro rata* share of a loss resulting from damage to the paddle shaft of the steamboat.

*Reynolds, Richards, McCutcheon & Logan* [*John S. Chapman* of counsel], for the plaintiff.

*Bigham, Englar & Jones* [*Forrest E. Single* of counsel], for the defendants.

PRINCE, J.:

These three actions were tried as one and involve an interpretation of policies of insurance against marine risks.

The question of law presented is novel to the courts of this State. The plaintiff is the receiver of the Hudson Navigation Company, which owned a passenger steamboat named the *Rensselaer*. It is sought to hold the respective defendants for their *pro rata* shares of a loss which was sustained because of a fracture in the *Rensselaer's* starboard paddle shaft which required its replacement at a cost which plaintiff seeks to recover from the defendant insurance companies.

The facts are not in dispute. On July 1, 1922, the defendants insured the steamer for one year against the perils of the sea, collision, or damage through breakage of shafts or any latent defects. This steamer apparently was operated during the summer months, and was thoroughly inspected annually in the spring of the year. Such regular inspection was made in March, 1923, and at that time the shaft was not fractured. On June 4, 1923, a collision occurred between the *Rensselaer* and a barge, resulting in injuries to the starboard side of the *Rensselaer* which apparently were adjusted, and at that time no injury to the shaft was discovered. On July 1, 1923, the defendants again insured the *Rensselaer*, and on these policies the actions are brought. Apparently the 1923 season ended about the 15th of December, 1923, when the *Rensselaer* ceased to operate. A regular examination of the *Rensselaer* was made on March 4, 1924, when it was disclosed that its starboard paddle shaft was fractured in a diagonal course between fifteen and nineteen inches. A survey was had, at which the defendants were represented and the shaft was condemned. It was considered unsafe even to move her on her own power, and she was towed to the repair yard where the old shaft was removed and a new one installed.

I am satisfied from the evidence that the fracture did not develop and was not discoverable until at least after December 15, 1923; in other words, that the fracture developed during the currency of the policies upon which these actions are brought. The provision of the policy requiring construction is as follows: " This insurance also specifically to cover (subject to the free of average warranty) loss of or damage to hull or machinery, through the negligence of Master, Charterers, Mariners, Engineers, or Pilots, or through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the Owners of the Ship, or any of them. * * *."

It will be noted that the insurance covers not only damage to hull or machinery through any latent defect in the machinery or hull, but also loss of hull or machinery through latent defects.

Construing this clause favorably to the insured, as it must be, I am clear that the loss for which plaintiff seeks to recover was one of the risks which the defendants assumed. The language is plain that the insurance covers loss of machinery through latent defects. Both loss and damage from latent defects are insured against. If there had been an accident due to this defective shaft, with a resultant loss of the steamer, its value, including that of the shaft, would have been recoverable. The important question to be determined is whether this was a loss occurring during the life of the policy. It is undisputed that the fracture was due to latent defects. The phrase " latent defects " is not defined in the policy. The evidence discloses that the average life of a paddle shaft is about twenty-five years. This one became useless in fifteen. Hardly anything is perfect or of uniform strength throughout its texture. An unknown imperfection in steel resulting in a fracture is a latent defect. Undoubtedly the imperfection existed when the policy was issued on July 1, 1923, but it was then unknown. It developed during the currency of the policies. In my opinion the policies covered such a loss. Under the policies the loss must be deemed to have been sustained when the defect became patent, and that was on March 4, 1924.

Judgment is awarded to the plaintiff in each case for the amount claimed.